# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

**HOMER LEE REECE,**  )
  )
       **Plaintiff,**  )
  )
v.  )  Case No. CIV-17-278-RAW-SPS
  )
**COMMISSIONER of the Social**  )
**Security Administration,**  )
  )
       **Defendant.**  )

## REPORT AND RECOMMENDATION

The claimant Homer Lee Reece requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the decision of the Commissioner should be REVERSED and the case REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951).  *See also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was forty years old at the time of the administrative hearing (Tr. 27).  He completed tenth grade, and has worked as a construction cleaner, general labor, short order cook, parts stocker, and window assembler (Tr. 20, 240).  The claimant alleges he has been unable to work since December 16, 2013, due to his right hand missing fingers, a low IQ, and mental health problems (Tr. 239).

### Procedural History

On December 16, 2013 the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85.  His application was denied.  ALJ Deborah L. Rose conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated February 25, 2016 (Tr. 13-22).  The Appeals Council denied review, so the ALJ's opinion represents the Commissioner's final decision for purposes of this appeal.  *See* 20 C.F.R. § 416.1481.

### Decision of the Administrative Law Judge

The ALJ made her decision at steps four and five of the sequential evaluation.  She found that the claimant had the residual functional capacity (RFC) to perform a reduced range of medium work, as defined in 20 C.F.R. § 416.967(c), *i. e.*, he could lift/carry twenty-five pounds frequently and fifty pounds occasionally, stand/walk six hours in an eight-hour workday, and sit six hours in an eight-hour workday, and that he could not operate hand controls with the right upper extremity; and could only occasionally handle,

finger, and feel with the right hand due to the loss of his right ring and pinky fingers and the fixed position of the middle finger. Additionally, she determined that the claimant could understand, remember, and carry out simple instructions, make simple work-related decisions, and have superficial work-related interaction with coworkers and supervisors, as well as occasional interaction with the public (Tr. 17). The ALJ thus concluded that the claimant could return to her past relevant work as a general laborer or parts stocker, and alternatively, that there was other work he could perform, *i. e.*, janitorial, warehouse worker, office cleaning, and production inspector (Tr. 20-21). The ALJ thus concluded that the claimant was not disabled (Tr. 22).

## Review

The claimant contends that the ALJ erred by: (i) failing to consider the entire record and all his impairments, including his hypertension, obesity, and mental impairments, and (ii) further failed to consider the combined effect of his impairments, as well as his moderate impairment related to concentration, persistence, or pace. The undersigned Magistrate Judge agrees that the ALJ failed to account for all the claimant's impairments, and the decision of the Commissioner should therefore be reversed.

The ALJ determined that the claimant had the severe impairments of partial loss of right hand due to remote amputation, bipolar disorder, and history of substance abuse in remission since June 2014, as well as the nonsevere impairments of hypertension, obesity, and hepatitis C (Tr. 15). As relevant to this appeal, the medical evidence reflects that the claimant's blood pressure ranged as follow: 172/112 on February 21, 2014; 132/92 on July 21, 2014; 133/88 on October 21, 2014; 136/100 on February 6, 2015; 179/108 on April 30,

2015; 143/92 on May 15, 2015; and 144/98 on September 24, 2015 (Tr. 372, 412, 420, 479, 482, 507, 537). Treatment notes regarding the claimant's hypertension on September 24, 2015 state that the claimant's hypertension started in 2013 and was "currently getting worse," noting the claimant had risk factors including depression, family history, hypertension, gout or CAD, obesity, and smoking (Tr. 534). During this same time frame, the claimant's weight ranged from 304 to 336 pounds (Tr. 420, 479, 482, 507, 537). On a May 15, 2015 visit with Dr. Anna Miller, she noted that she discussed the claimant's obesity and the option of bariatric surgery "to sustain life," and noted that the claimant was 90% likely to have obstructive sleep apnea given his BMI of over 40 at forty years of age (Tr. 512). This conversation was repeated on September 22, 2015, and the claimant was advised to follow up with his PCP (Tr. 521).

    The claimant was not sent for a consultative physical examination. State reviewing physicians determined that, as to his physical impairments, the claimant was capable of performing medium work, but with manipulative limitations related to the partial loss of right hand secondary to remote amputation including handling, fingering, and feeling (Tr. 104-105, 121-122). As to his mental impairments, Dr. Karen Kendall, Ph.D., determined that the claimant was moderately limited in the ability to carry out detailed instructions, work in coordination with or in proximity to others without being distracted by them, and interact appropriately with the general public (Tr. 106). Additionally, she noted that the effects of panic attacks and depression interfered with the claimant's concentration for more complex tasks (Tr. 106). She concluded that the claimant could perform simple one- to two-step tasks in a familiar setting with routine supervision; could

pace, concentrate, and persist for and eight-hour workday and forty-hour workweek for simple tasks despite some psychological symptoms; could interact for incidental work purposes; and could interact occasionally with familiar customers and other members of the public on an incidental basis (Tr. 107).  Upon review, Dr. Burnard Pearce found that the claimant had moderate limitations in the ability to understand and remember detailed instructions, carry out detailed instructions, work in coordination with or in proximity to others without being distracted by them, interact appropriately with the general public, and accept instructions and respond appropriately to criticism from supervisors.  In support, Dr. Pearce also referenced the claimant's panic attacks and depression, as well as stating that bipolar disorder limited the claimant's ability to tolerate criticism (Tr. 123-124).  He reached the same RFC conclusion as Dr. Kendall, however (Tr. 124).

     In her written opinion at step two, the ALJ made findings as to the claimant's severe impairments (partial loss of right hand due to remote amputation, bipolar disorder, and history of substance abuse in remission since June 2014), then turned to the nonsevere impairments.  She found that the claimant's hypertension was controlled based on a July 21, 2014 follow-up appointment, that his obesity did not increase his functional limitations, and that the none of the nonsevere impairments (hypertension, obesity, hepatitis C), singly or in combination, caused functional limitations (Tr. 15).  At step four, the ALJ discussed the medical evidence as it pertained to the claimant's severe impairments but made no mention of his nonsevere impairments (Tr. 17-20).  She gave little weight to the opinion in the record that the claimant was unable to manage work-related pressure and interactions,

and great weight to the state reviewing physicians as to his physical and mental impairments (Tr. 20). The ALJ then determined that the claimant was not disabled.

The claimant asserts that the ALJ erred in formulating his RFC, and the undersigned Magistrate Judge agrees. This Court and the Tenth Circuit have repeatedly stated that, once the ALJ determined that the claimant had *any* severe impairment, any failure to find additional severe impairments will not be a sole basis for reversal and is considered harmless. *See Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. But this does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted]. Nevertheless, the ALJ *is required* to consider the effects of all the claimant's impairments (individually and in combination) and account for them in formulating the claimant's RFC at step four, which he did not do. In particular, aside from noting the claimant's weight as part of a recitation from his hearing testimony, the ALJ failed to account for the claimant's obesity and hypertension entirely in formulating the RFC. Additionally, the ALJ failed to properly assess the combined effect of all the claimant's impairments – both severe and nonsevere – in assessing his RFC. Both of these errors require reversal. *See, e. g., Grotendorst v. Astrue*, 370 Fed. Appx. 879, 884 (10th Cir. 2010) ("[O]nce the ALJ decided, without properly applying the special technique, that Ms. Grotendorst's mental impairments were

not severe, she gave those impairments no further consideration. This was reversible error."). *See also McFerran v. Astrue*, 437 Fed. Appx. 634, 638 (10th Cir. 2011) (unpublished opinion) ("[T]he ALJ made no findings on what, if any, work-related limitations resulted from Mr. McFerran's nonsevere mood disorder and chronic pain. He did not include any such limitations in either his RFC determination or his hypothetical question. Nor did he explain why he excluded them. In sum, we cannot conclude that the Commissioner applied the correct legal standards[.]"). He should *at least* have discussed the impact any nonsevere impairments, on the claimant's severe impairments. This matters here where, contrary to the ALJ's notation of one instance in the record where the claimant's hypertension was controlled, the record reflects repeated attempts at regulating the claimant's hypertension, and a treatment note explicitly stating that it was continuing to get worse.

Furthermore, the medical evidence reflects that the claimant's obesity was to the point that bariatric surgery was twice recommended "to sustain life," and the claimant had a 90% likelihood of obstructive sleep apnea given his BMI. Indeed, the ALJ "must consider any additional and cumulative effects of obesity" when assessing an individual's RFC. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A, 1.00 Musculoskeletal System, Q. However, "[o]besity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment." Soc. Sec. Rul. 02-1p, 2002 WL 34686281, at *6 (Sept. 12, 2002). Therefore, "[a]ssumptions about the severity or functional effects of obesity combined with other impairments [will not be made]," and "[w]e will evaluate each case based on the information in the case record." *Id.* Here, the

-8-

ALJ ignored the evidence in the record that the claimant's obesity was likely causing obstructive sleep apnea and was extreme to the point of needing surgery to sustain life, much less *how* the claimant's obesity and co-existing impairments actually affected the RFC.  *See, e. g., Fleetwood v. Barnhart*, 211 Fed. Appx. 736, 741-42 (10th Cir. 2007) (noting that "obesity is [a] medically determinable impairment that [the] ALJ must consider in evaluating disability; that [the] combined effect of obesity with other impairments can be greater than effects of each single impairment considered individually; and that obesity must be considered when assessing RFC."), *citing* Soc. Sec. Rul. 02-1p, 2002 WL 34686281, at *1, *5-*6, *7.  *Cf. DeWitt v. Astrue*, 381 Fed. Appx. 782, 785 (10th Cir. 2010) ("The Commissioner argues that the ALJ adequately considered the functional impacts of DeWitt's obesity, given that the ALJ's decision recognizes she is obese and ultimately limits her to sedentary work with certain restrictions.  But there is nothing in the decision indicating how or whether her obesity influenced the ALJ in setting those restrictions.  Rather it appears that the ALJ's RFC assessment was based on 'assumptions about the severity or functional effects of [DeWitt's] obesity combined with [her] other impairments' – a process forbidden by SSR 02-1p." ), *citing* Soc. Sec. R. 02-1p, 2002 WL 34686281, at *6.

Because the ALJ failed to properly evaluate *all* the claimant's impairments singly and in combination, the decision of the Commissioner is therefore reversed, and the case remanded to the ALJ for further analysis of the claimant's impairments.  If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and the case REMANDED for further proceedings not inconsistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 28th day of February, 2019.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**